IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Brandon Stratton,       :
             :  Case No. 1:24-cv-444
   Plaintiff,      :
             :  Judge Susan J. Dlott
     v.       :
             :  Order Granting Defendants' Motion for
Highland County, *et al.*,    :  Judgment on the Pleadings
             :
   Defendants.     :

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Doc. 12.)  Plaintiff Brandon Stratton has filed state and federal claims against Defendants Highland County, Ohio, Donald Barrera, and Anneka Collins asserting that he was defamed and wrongfully terminated from his employment with the Highland County Sheriff's Office ("HCSO").  Defendants move for judgment on the pleadings on each claim, and alternatively, they assert that the Court should decline to exercise supplemental jurisdiction over the claims arising from state law if the Court grants judgment in their favor on the federal claims.  For the reasons below, the Court will **GRANT** Defendants' Motion for Judgment on the Pleadings.

## I.  BACKGROUND

### A.  Factual Allegations

The well-pleaded factual allegations of the Complaint are taken as true for purposes of the Motion for Judgment on the Pleadings.  (Doc. 1.)  Stratton was the Chief Deputy of the HCSO, Barrera was the Highland County Sheriff, and Collins was and is the Highland County Prosecutor when the events precipitating this lawsuit took place.  The Court will refer to the

parties by the job title they held at the time of the relevant events in setting out the factual allegations.

Deputy Stratton alleged that in November 2019 he came into possession of electronic files showing evidence of possible assault, sex trafficking, illegal gambling, and other serious crimes by Prosecutor Collins's father.  (Doc. 1 at PageID 2–3.)  Deputy Stratton notified Sheriff Barrera about the evidence and told him that the HCSO needed to keep the evidence for use in a possible criminal investigation.  (*Id.*)  Deputy Stratton stored the evidence on a flash drive in a safe in his office.  (*Id.* at PageID 3.)  He requested to pursue an investigation into Prosecutor Collins's father, but Sheriff Barrera forbid him from investigating further.  (*Id.*)

In October 2020, Prosecutor Collins demanded a copy of the flash drive as a "private citizen," but Deputy Stratton kept the flash drive in his safe.  (*Id.*)  In April 2021, Sheriff Barrera told Deputy Stratton that Prosecutor Collins accused him of improperly storing evidence at his home.  (*Id.*)  Deputy Stratton showed Sheriff Barrera that the evidence was stored in his safe, and he advised Sheriff Barrera that Prosecutor Collins was harassing him.  (*Id.* at PageID 3-4.)  He asked to investigate Prosecutor Collins and her father, but Sheriff Barrera would not permit an investigation.  (*Id.* at PageID 4.)

In May 2023, Prosecutor Collins falsely reported to the Ohio Bureau of Criminal Investigation ("Ohio BCI") that Deputy Stratton stole evidence from the HCSO evidence room. (*Id.*)  In August 2023, Prosecutor Collins requested Sheriff Barrera to investigate Deputy Stratton for sending an improper workplace email, and she then falsely reported Deputy Stratton for inappropriate workplace conduct to the Ohio BCI.  (*Id.*)  In August and September 2023, Sheriff Barrera told Deputy Stratton that Prosecutor Collins complained to him about Deputy Stratton's intention to run for sheriff.  (*Id.*)

Deputy Stratton met with an FBI agent on an unrelated law enforcement matter in February 2024. (*Id.*) During the conversation, Deputy Stratton told the FBI agent about the flash drive evidence showing possible criminal activity. (*Id.*) He provided copies of the evidence to the FBI agent at the agent's request. (*Id.*) Then, on March 7, 2024, Sheriff Barrera told Deputy Stratton that he had met with Prosecutor Collins and that they determined to suspend Deputy Stratton based on false allegations of "unethical" behavior. *(Id.* at PageID 4–5.) On March 12, 2024, Sheriff Barrera told Deputy Stratton that he would be returned to full duty. (*Id.* at PageID 5.) He also asked Deputy Stratton for the flash drive so that he could destroy it. (*Id.*) Later that day, Sheriff Barrera placed Deputy Stratton back on suspension. (*Id.*) Sheriff Barrera fired Deputy Stratton from the HCSO on March 20, 2024. (*Id.*)

Deputy Stratton was running for sheriff in 2024 at the time he was subjected to the disciplinary actions. (*Id.*) The HCSO issued press releases casting Deputy Stratton in a poor light when he was placed on suspension and when he was fired. (*Id.*) Deputy Stratton lost the election for sheriff. (*Id.*)

Defendants filed an Answer in which they admitted some Complaint allegations and denied others. (Doc. 7.) Defendants admitted that they placed Deputy Stratton on paid administrative leave on March 7 and 12, 2024 and that they terminated his employment on March 20, 2024. (*Id.* at PageID 27–28.) For context, the Court notes that Defendants asserted that Deputy Stratton took the flash drive containing evidence relevant to Hillsboro Municipal Court Case No. CRB 1900965 against David Fairley, Prosecutor Collins's father, in violation of the HCSO's written evidence storage policy. (*Id.* at PageID 23–26.) Defendants also asserted that multiple law enforcement agencies investigated Fairley, that no other charges were pursued, and that the Municipal Court had ordered that the flash drive be destroyed at the conclusion of

Case No. CRB 1900965.  (*Id.* at PageID 25, 27.)  Finally, Defendants asserted that on March 12,

2024 Sheriff Barrera gave Stratton the opportunity to return from administrative leave if he

would turn over the flash drive, but Stratton refused to do so.  (*Id.* at PageID 27–28.)  In

response, Stratton filed an Affidavit insisting that Sheriff Barrera gave him verbal permission to

maintain possession of the flash drive and that he was unaware of a court order that it be

destroyed.  (Doc. 17-1 at PageID 133–136.)

**B.     Procedural Posture**

Stratton filed his Complaint against Highland County, former Sheriff Barrera, and

Prosecutor Collins on August 21, 2024 asserting seven claims:

1.     Wrongful termination/whistleblower retaliation under Ohio Revised Code
       § 4113.52 against Highland County and former Sheriff Barrera;

2.     Wrongful termination in violation of Ohio public policy against Highland
       County and former Sheriff Barrera;

3.     Defamation against former Sheriff Barrera and Prosecutor Collins;

4.     Defamation *per se* against former Sheriff Barrera and Prosecutor Collins;

5.     Defamation *per quod* and workplace defamation against former Sheriff
       Barrera and Prosecutor Collins;

6.     Violation of the federal Racketeer Influenced and Corrupt Organizations
       ("RICO") statute, 18 U.S.C. § 1962(b) & (c);[1] and

7.     RICO conspiracy in violation of 18 U.S.C. § 1962(c) against former
       Sheriff Barrera and Prosecutor Collins.

(Doc. 1 at PageID 5–11.)  Stratton asserts that the Court has federal question subject matter

jurisdiction pursuant to 28 U.S.C. § 1331.  (Doc. 1 at PageID 2.)  Defendants filed their Answer

on October 21, 2024 denying liability on all claims and asserting affirmative defenses.  (Doc. 7.)

Defendants attached to the Answer a copy of the HCSO policy on evidence storage.  (Doc. 7-1.)

---

[1]  Stratton labeled this claim as one for whistleblower protection under the RICO Act, but he alleges that Defendants
violated 18 U.S.C. § 1962(b) & (c).

Defendants filed the pending Motion for Judgment on the Pleadings on December 19, 2024. (Doc. 12.) Stratton filed a Response in opposition, to which Defendants filed a Reply. (Docs. 17, 18.)

## II.     STANDARD OF LAW

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings. The legal standard for adjudicating a Rule 12(c) motion is the same as that for adjudicating a Rule 12(b)(6) motion. *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citation omitted). The district court may only consider the pleadings when ruling on a Rule 12(c) motion, but the pleadings include documents attached to an answer if it is "central to the plaintiff's claim and of undisputed authenticity." *Beasley v. Wells Fargo Bank, N.A.*, No. 3:17-CV-00726, 2017 WL 3387046, at *3 (M.D. Tenn. Aug. 7, 2017), *aff'd sub nom.*, *Beasley v. Wells Fargo Bank, N.A. for Certificate Holders of Park Place Sec., Inc.*, 744 F. App'x 906 (6th Cir. 2018).

## III.    ANALYSIS

Defendants move to dismiss Stratton's state and federal claims. The Court will analyze the federal claims first. If Defendants are entitled to judgment on the federal claims, then the Court will decline to exercise supplemental jurisdiction over the state law claims.

## A.     Federal Claims

### 1.     Count Six—Violation of RICO

Stratton alleges generally in Count Six that Defendants retaliated against him for

whistleblowing activities in violation of RICO.  (Doc. 1 at PageID 8–10.)  RICO makes it

unlawful for a person:

> (b) . . . through a pattern of racketeering activity or through collection of an
> unlawful debt to acquire or maintain, directly or indirectly, any interest in or
> control of any enterprise which is engaged in, or the activities of which affect,
> interstate or foreign commerce. [And]
>
> (c) . . . employed by or associated with any enterprise engaged in, or the activities
> of which affect, interstate or foreign commerce, to conduct or participate, directly
> or indirectly, in the conduct of such enterprise's affairs through a pattern of
> racketeering activity or collection of unlawful debt. [And]
>
> (d) . . . to conspire to violate any of the provisions of subsection (a), (b), or (c) of
> this section.

18 U.S.C. § 1962.  RICO provides a private right of action to "[a]ny person injured in his

business or property by reason of a violation of section 1962 . . . [to] recover threefold the

damages he sustains and the cost of the suit, including a reasonable attorney's fee."  18 U.S.C. §

1964(c).

A plaintiff asserting a RICO violation must plead these elements: "(1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity."  *Moon v. Harrison Piping Supply*,

465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479,

496 (1985)).   RICO defines a "pattern of racketeering activity" as used in § 1961(b) & (c) to

require two or more predicate acts of racketeering activity within a ten-year period.  18 U.S.C.

§ 1961(5).  Only the criminal offenses listed in 18 U.S.C. § 1961(1) can serve as predicate acts of

racketeering activity for purposes of RICO liability.

Two or more predicate acts are the "minimum necessary condition for the existence of

such a pattern" of racketeering activity.  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989).

However, courts have required plaintiffs to plead more than just the existence of at least two

predicate acts.  The Supreme Court stated Congress "intend[ed] a more stringent requirement

6

than proof simply of two predicates, but [it] also envision[ed] a concept of sufficient breadth that it might encompass multiple predicates within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity." *Id.*  The predicate acts must relate to each other such that they have the "the same or similar purposes, results, participants, [or] victims . . . ." *Id.* at 240; *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 409 (6th Cir. 2012).  The predicate acts also must show continuity with either an open-ended or closed-ended pattern. *Heinrich*, 668 F.3d at 409.  Open-ended continuity is "a set of predicate acts that poses a threat of continuing criminal conduct extending beyond the period in which the predicate acts were performed." *Id.* at 409–410.  Closed-ended continuity is "a series of related predicate acts extending over a substantial period of time[,]" which is more than a few weeks or months.  In *H.J. Inc.*, the Supreme Court stated that predicate acts occurring over six years "may be sufficient to satisfy the continuity requirement."  492 U.S. at 250.

Defendants move to dismiss Stratton's RICO claim, in part, on the basis that Stratton failed to adequately plead a pattern of racketeering activity.  Stratton responds that he satisfied the pattern element of a RICO claim by pleading in the Complaint that Defendants violated 18 U.S.C. §§ 1510 (relating to obstructions of criminal investigations), 1511 (relating to the obstruction of state or local law enforcement as to illegal gambling), 1512 (relating to tampering with a witness, victim, or informant), and 1513 (relating to retaliating against a witness, victim, or informant), each a criminal statute listed as a racketeering activity in § 1961(1).  (Doc. 1 at PageID 9.)  He alleges that Defendants obstructed his attempts to investigate Prosecutor Collins's father by instructing him not to investigate, reporting him to the Ohio Bureau of Criminal Investigations for improper workplace conduct, placing him on leave for unethical conduct, and terminating his employment.  (*Id.* at PageID 3–5.)  The first act occurred in

November 2019 and the last act in March 2024. (*Id.*)

Here, Stratton's allegations, upon a superficial review, appear to meet the relationship and continuity requirements for a pattern of racketeering activity. Defendants' alleged actions are related in that they were geared towards preventing Stratton from investigating whether Prosecutor Collins's father had engaged in criminal activity. And the alleged actions appear to demonstrate a closed-ended pattern lasting over four years from November 2019 to March 2024. Nonetheless, courts in the Sixth Circuit have repeatedly held that a single scheme targeting a single victim is inadequate to constitute a racketeering pattern. *See Bachi-Reffitt v. Reffitt*, 820 F. App'x 913, 918 (6th Cir. 2020) (finding that a single scheme to deny marital assets to a single victim during the limited period of divorce proceedings is not a RICO pattern); *Moon v. Harrison Piping Supply*, 465 F.3d 719, 725 (6th Cir. 2006) (finding that a single scheme lasting two and one-half years to deprive workers' compensation benefits to one person would not constitute a closed-ended scheme); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 135 (6th Cir. 1994) (allegations "involving a single victim and a single scheme for a single purpose over seventeen months [do not] constitute the type of 'long-term criminal conduct' Congress sought to prohibit with RICO"); *Cyr v. Battah,* No. 22-10290, 2023 WL 1798733, at *4 (E.D. Mich. Feb. 7, 2023) (stating that "a scheme involving a single objective to defraud a single victim cannot sustain a closed-period continuity § 1962(c) claim"); *Percival v. Girard*, 692 F. Supp. 2d 712, 723 (E.D. Mich. 2010) (finding that a single scheme to deprive a single victim of rights under a settlement agreement is not a RICO pattern).

These cases holding that a RICO claim cannot be based on a single scheme against a single victim are consistent with the Sixth Circuit's use of a multi-factor test to determine whether a plaintiff adequately pleaded a racketeering pattern:

> [T]o state the inquiry simply, a pattern is the sum of various factors including: the length of time the racketeering activity existed; the number of different schemes (the more the better); the number of predicate acts within each scheme (the more the better); the variety of species of predicate acts (the more the better); the distinct types of injury (the more the better); the number of victims (the more the better); and the number of perpetrators (the less the better).

*Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1110 (6th Cir. 1995). The actions in this case took place over more than four years, which indicates a pattern. But there was only one scheme (an attempt to thwart Stratton from investigating Prosecutor Collins's father) with only a few closely related predicate acts (obstruction and employment retaliation), one victim (Stratton), and one injury (loss of employment). The Court concludes that the *Columbia Natural Resources* factors support dismissing the RICO claim. *See id.*; s*ee also AGC Flat Glass N. Am. v. John*, No.2:23-cv1980, 2024 WL 1174209, at *3 (S.D. Ohio Mar. 19, 2024) (dismissing RICO claim based on embezzlement although the scheme lasted ten years and had several perpetrators because "it was a single scheme against a single victim").

Stratton cites to only a single RICO case in his Response in opposition to the Motion for Judgment on the Pleadings. He cites *Williams v. Hall*, 683 F. Supp. 639 (E.D. Ky. 1988), for the proposition that district courts frequently uphold standing for employees to sue their former employers under RICO. This Court will not uphold Stratton's RICO claim based on *Williams*. The *Williams* decision pre-dates *Columbian Natural Resources* and the list of cases above holding that a RICO claim cannot be based on a single scheme against a single victim. It also is distinguishable. The *Williams* plaintiffs alleged that their company and company officials committed predicate acts of racketeering by engaging in a broad scheme to bribe officials in Middle Eastern countries to further the company's business operations. *Id.* at 640–641. They also alleged that they were terminated because they refused to participate in their employer's prohibited predicate acts, but they did not allege that their terminations were among the predicate

acts.  *Id.*  The *Williams* decision addressed whether the plaintiffs had standing to bring a RICO claim because they were not directly injured by the alleged predicate acts of racketeering activity.  *Id.* at 641–642.[2]  The immediate issue in this case is different.  The *Williams* decision is irrelevant to the analysis of whether a pattern of racketeering activity can be based on Defendants' alleged acts of obstruction and employment retaliation against one individual for one purpose.  The relevant case law instructs that such allegations are insufficient.

Consistent with Sixth Circuit authority, the Court holds that Stratton has failed to plead that Defendants engaged in a pattern of racketeering activity for purposes of 18 U.S.C. § 1962(b) and (c).  The Court will grant judgment on the pleadings to Defendants on Stratton's claim for a violation of RICO on this basis and need not examine Defendants' other arguments.

### 2.        Count Seven—RICO Conspiracy

Stratton alleges in Count Seven that Prosecutor Collins and former Sheriff Barrera conspired to violate RICO in violation of 18 U.S.C. § 1962(d).  (Doc. 1 at PageID 10–11.) "To state a claim for RICO conspiracy, one must successfully allege all the elements of a RICO violation, as well as the existence of an illicit agreement to violate the substantive RICO provision."  *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 805–806 (6th Cir. 2015) (citation omitted).  Stratton has not pleaded a RICO conspiracy claim upon which relief can be granted because he did not allege the required elements of the purported underlying RICO violation.  The Court will grant judgment on the pleadings to Defendants on Stratton's RICO conspiracy claim as well.

---

[2]  The district court held in *Williams* that the plaintiffs had "standing to sue for their discharge and resulting damage if they [could] prove that the terminations were overt acts done in furtherance of a conspiracy to operate Ashland through a pattern of racketeering activity as defined by the RICO statute."  683 F. Supp. at 642.  The *Williams* holding on this issue was criticized by the Sixth Circuit two years later.  *See Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 155 (6th Cir. 1990).  The Sixth Circuit in *Kramer* held that a plaintiff fired for reporting alleged RICO violations did not have standing to bring a RICO claim where his discharge was not directly caused by the predicate acts of racketeering activity.  *Id.* at 155–156.

**B.**     **State Law Claims**

Stratton alleges five tort claims under Ohio law in Counts One to Five of the Complaint. (Doc. 1 at PageID 5–8.)  Because Stratton asserted only federal question jurisdiction under 28 U.S.C. § 1331, (*Id.* at PageID 2), the Court can exercise subject matter jurisdiction over the state law claims only under 28 U.S.C. § 1367.  A district court can decline to exercise supplemental jurisdiction over the state law claims in circumstances like this when the court "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  In fact, the Sixth Circuit has instructed that when all federal claims are dismissed before trial, "the balance of considerations usually will point to dismissing the state law claims."  *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–1255 (6th Cir. 1996), *amended on denial of reh'g,* No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998).  Accordingly, the Court will dismiss without prejudice Counts One to Five for lack of subject matter jurisdiction.

**IV.     CONCLUSION**

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings is **GRANTED** insofar as Defendants are granted judgment on Counts Six and Seven.  Counts One to Five are dismissed without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

BY THE COURT:


S/Susan J. Dlott
Susan J. Dlott
United States District Judge

11